Good morning, Your Honors. May it please the Court. My name is Roger Bailey. I'm here on behalf of the appellant and cross-appellee Global Apogee. I'd like to optimistically reserve five minutes of my time for you. All right. I'll try to help you out. Thank you. We're up on appeal from an order granting summary judgment on a trademark case, and the trademark at issue is the trademark Candy Graham. Importantly, though, for this appeal, the registered mark that has been registered, it'll be 30 years next year, includes a hyphen. That mark is an incontestable mark, which is a status that can be obtained after five years of continuous use. The appellant has maintained the incontestable status of that mark, and as I said, next year will be 30 years. Also, importantly, is that that registration is a registration that covers goods, not services, not the delivery of candy. It covers candy in Class 30, and it covers greeting cards in Class 16. At the district court level, the court was confronted with the question as to whether the mark Candy Graham was generic and, therefore, not eligible for protection. The court concluded ... The district court said that the question of whether the Candy Graham with the hyphen really came up for the first time in your opposition to summary judgment. There was a notice problem from the district court's point of view. How do you respond to that? Well, we alleged in all of the complaints, including the operative complaint, second amended complaint, infringement of the registered mark Candy hyphen Graham. That's in and is identified by the registration. We also alleged, though, infringement of the unhyphenated, what we've referred to as common law trademark, Candy no hyphen. The interesting thing about the district court's decision on the issue of genericness was, the court concluded, with all the evidence presented by the plea, that Candy hyphen Graham was not generic. They didn't make a showing. Let me go to page 15 of the complaint, which has been submitted to us as excerpts of Record 3917, paragraph 41. You said, defendant's use of the registered Candy dash Graham trademark and then open print without the hyphen to advertise, promote, and sell without the consent. So the way I read it is that you're alleging that the conduct that violates your trademark is the use of Candy Graham without the hyphen. That's a pretty compelling disclaimer there. So it seemed to me, this is, I think, from what I gathered, the district court's perspective is that there was that disclaimer in the complaint. The case then proceeded through the discovery. They filed a motion for summary judgment, making the argument of the generic nature of Candy Graham. And then in opposition, then you raise this argument. Am I misreading the record somehow? Well, I would say this, and I'm going to stick with the operative complaint, and we took the trouble to actually paste into the complaint images from the defendant's website. And on page eight of the second amended complaint, you can see a screenshot of the defendant's website and displayed clearly. 3910? Yes. Yeah. You can see at the bottom that there is a screenshot of Candy Graham, which appears very clearly with the word candy separated by what we argue is the visual equivalent of a hyphen right there in the complaint, showing this was the use. All right. So is the argument then that Candy and then Graham with an envelope in the middle somehow negate the disclaimer in paragraph 41? Yes, because there were both uses. We tried to visually display what we consider to be the visual equivalent of a hyphen. And then also, there were repeated uses also on that same page. There is a menu bar that shows the word Candy Graham without the visual equivalent of a hyphen. So again, attempting to use... in the next point. You're saying in paragraph 41 that the violative conduct is the use of Candy Graham without the hyphen. On page eight, it's Candy Graham, Candy envelope Graham, which is, you're saying, is the equivalent of the use of the hyphen. So your interpretation of the way you want me to look at the complaint is that you're saying both conduct is violative. Correct. The intent in using the screenshots was to show, because otherwise we simply could have just printed the word Candy Graham, no hyphen. But I think it was important to show how the defendant, Apolli, was using the mark. It was both in the unhyphenated form and it was in the hyphenated form. That at least was the intention in showing visual depictions of how the mark was used. And admittedly, it was both forms that appeared in their advertising materials and their marketing materials. And again, we came back to the fact that the registration at issue, which incidentally is phonetically equivalent when spoken, you can't distinguish between Candy hyphen Graham and Candy Graham, all one word. There still is the issue of phonetic equivalence, where even if the spoken Candy Graham couldn't be detected to use a hyphen when spoken, we still have the problem of phonetic equivalence. Just to make sure I know what you're saying, it seems to me then you're saying that those you sued used the word Candy Graham without a hyphen. They also used Candy with an envelope Graham. Did they ever use Candy hyphen Graham? They had Twitter. That's what I'm looking. Is that in the complaint? No. No, it came out in discovery. That isn't in the complaint, right? It came out in discovery. The only thing we really have in the complaint, which is what the district court was really focusing on, are those two types of what you say is infringing on Candy hyphen Graham, which is your federally protected mark.  All right. Correct. That's what I understood. Thank you. Could I clarify one thing? As I understand it, we're looking at a summary judgment and not judgment on the pleadings. Is that true or am I mistaken? That's correct. The evidence that came out in discovery is potentially relevant to summary judgment where it would not have been relevant for judgment on the pleadings. That's also correct. Okay. Thank you. I suppose to focus on what we believe... Let me clarify because I don't recall offhand. Is part of the evidence that you're relying on came from the privileged materials? We did not rely on... I'm talking specifically about this evidence that came out about the Candy dash Graham. No, there was a Twitter post that we obtained later in discovery on our own, and I believe there was an objection to it. It was presented at the district court. I believe the objection to that evidence was sustained on the grounds that it wasn't disclosed early enough. It wasn't part of the package of privileged materials that you were arguing about in the district court?   It wasn't in front of the district court as I understood it. Because the judge, again, sustained the objection to the use of this Twitter post that included clearly an actual hyphen, not just an envelope, an actual hyphen. So again, we take issue... There was evidence of the defendant using Candy hyphen Graham, and also visually, repeatedly in their marketing and advertising materials using that. And I suppose the issue for us on summary judgment is, even if you accept the premise that Candy Graham, no hyphen, is generic, just for the sake of argument, given that the district court concluded that Candy hyphen Graham was not generic, we should have had the opportunity at a minimum to go to the jury on whether Candy hyphen Graham, as it appears in their advertising materials with the envelope, is that sufficient to create likelihood of confusion? Well, it's a question of fairness. I think that from the district court's perspective, it's, look, you know, when I'm reading the complaint and you're saying, you violated the Lanham Act by taking my Candy Graham mark and you used it without the hyphen, and that's the conduct that violates the mark. And then later on, you have a picture, or earlier, you have a picture of Candy envelope Graham, and now you're saying that it's either equivalent to a dash, which is an argument that was raised, I think, in the briefing, or that it's on top of the use. I can't really tell that, and the district court, I think, couldn't tell that it informed the defense that that's what the theory was. And so from the district court's perspective, it's only when they've brought the summary that then this argument was made for the first time. And by then, they've gone through discovery without realizing what your theory of the case is. I think that's the problem, right? I understand, and again, I go back to the actual pleading, and again, the reason we visually captured what the defendant was doing was to say, when we go to the jury, we want to stand in front of the jury when the question is, show us the evidence that the defendant used a hyphenated version of the trademark. We would stand there with the very same image that was in the pleading, putting them on notice. This is what the jury's going to see. So this is what you need to be prepared to defend against. In addition to, we did allege use of an unhyphenated version, but I don't think it's fair to us to say we didn't say, this is the problem we have. It appears unhyphenated on the website, and it appears what we consider to be the equivalent to hyphenated on the website. I understand the argument. I know you wanted to save time. I did. Thank you. So I will reserve it. Let me ask you one question, which I want to ask simply because I think the other side needs to think about this as well. If you failed to introduce any evidence of the likelihood of confusion as to either mark, as they allege, why is summary judgment not proper for them? And I'll answer it this way. Because I frankly couldn't find any evidence of likelihood of confusion in the record. And that's why I'm asking the question. If you failed to introduce any evidence of the likelihood of confusion, that's their argument. Why shouldn't summary judgment be the proper method in this for the defendants? Because I know you've got to have some likelihood of confusion here someplace. And I didn't see any. So why not get rid of this case?  Two reasons. One is, as the court's aware, under Sleekcraft, there is an eight-factor test, strength of the mark, similarity of the goods, the defendant's intent in adopting this mark. There's a number of factors. And as this court said in J&J Beverage Company v. Jim Beam Products, that's 828 Federal 3rd, 1098, given the factual nature and the intensity of the factual analysis required for those eight factors. Well, the district court didn't have to talk about the factors because the district court just, well, they said, we don't need to examine those factors. We've already found about generic. So we don't need to get there. But I looked for what would you have said. I couldn't find any evidence of any likelihood of confusion on either cause to either mark in the record. And so I said to me, why am I even having this case? Why don't we just issue summary judgment on that alone? We have evidence in the record of actual confusion where people are calling.  Where? Tell me where. In the testimony of... Because as I saw it, or as I saw the record, there was in fact a report given by an expert who went out and looked about whether there would be any confusion or not and said, no, there won't be any. And nobody came back with anything from your side contrary to that report. That report was on generic and it's not likelihood of confusion. It wasn't a likelihood of confusion survey. It was a generic. Okay.  Okay. I'm going to look at it again. That's not the way I saw it. But it might be. You know better than I. I promise it. It was a genericness report.  Thank you.  Thank you. We ate almost all of your time up.  So I'll give you a couple of minutes back. Good morning, Your Honors. May it please the Court, John Dean for the defendants and appellees, Rosie O'Neill and Joshua Resnick. Candy grams and valentine grams have been sent by school children, businesses, and others for decades. I'm fairly confident that Your Honors, or perhaps someone you know, have sent or received a candy gram at some point in time. Hence the contention that the individual defendants in this case are liable for trademark infringement because their company utilized a candy gram by Sugarfina program is without basis in law. The Court should therefore affirm the District Court's order granting summary judgment for three independent reasons. First on genericness. Excuse me. Excuse me. Do you challenge the existence of the registered trademark? Of the registered term candy dash gram? No, Your Honor. Okay. Okay. But there's a distinction between the two. And I would argue a number of points there, Your Honor. Number one, the utilization based on the record in this case is that what was used by Sugarfina as alleged in the complaint is candy gram. That's clear. Paragraphs 41 and 42 of the complaint. So the fact that-  Also, what about those other allegations? With respect to the envelope, Your Honor? Yeah. Well, Your Honor, first- I mean, even in the facts, they say Sugarfina continued to use the candy dash gram trademark on its website and its retail stores after they were sent a cease and desist order. And then they go to those places that he pointed out to us, 39-10, 39-12, 39-13, 14, showing where they said otherwise. And just candy gram. Yes, Your Honor. Well, there's nothing in the record, actually, other than this Twitter post, which has been excluded, where the utilization of candy hyphen with a gram, the same mark that is the registered mark at issue, was utilized. So is it your position that as a matter of law, the capital letter candy with the envelope in place of a hyphen and the capital gram could not be sufficient to infringe the trademark? No, that's not our- Isn't that a factual question? So if that is one of the alleged infringements, I don't understand how that's generic. Twofold, Your Honor. One goes to genericness, and one goes to likelihood of confusion. As to burden shifting, but even before we get to burden shifting, for both candy gram- Is it correct that the district court didn't get to the sleep craft factors, right? It just got off the train at generic. So if we disagree with generic, doesn't it have to go back to the district court to consider all of the sleep craft factors on whatever record the parties may choose to make on that? Well, number one, Your Honor, that burden on likelihood of confusion rests with the plaintiffs. So the utter lack of- That's not my question. That's not my question. If we disagree with the holding that is generic, doesn't it have to go back to the district court to do the rest of the analysis that the court didn't do? No, Your Honor. Again, twofold. Number one, this court can look at the record, and we believe it's utterly ripe in the record. The Jensen case that we cited in our papers make that clear, that this court can affirm on any ground there is significant evidence in the record as to each and every factor as we've outlined in pages 33 to 44 of our briefings. So you're suggesting that this court ought to do the sleep, the, oh, I missed it, the sleep factors ourselves and make that determination? My first- Sleep craft factors? That's correct, Your Honor. My first argument is it can, and it is clear from the papers that there is an absolute dearth of evidence presented by the plaintiff to do so. But I'm not suggesting this court need make an exhausting analysis either of those factors. As Your Honor was keying into a moment ago, there is no evidence, and likelihood of confusion is plainly the plaintiff's burden. I thought, counsel, that there was testimony that there were people who called the wrong thinking they were sugarfina and vice versa. Was there not some testimony to that effect? Yes. There were alleged to be two to three vague telephone calls made by folks that supposedly had- Well, all you're doing is trying to under, with those adjectives, you're sort of saying they swore to it but don't believe it. But there is evidence that there is some confusion on the part of customers about who is the source of the candy. So three things, Your Honor. First, this is inadmissible hearsay evidence that's being proffered by the plaintiff. And that was made clear down below. There's not been an argument otherwise in that regard. Secondly, there hasn't been any demonstration, which is their burden, that these two or three telephone calls were somehow going to be admissible at trial. So there's utterly no basis for them to be accepted at summary judgment. But the court did give them the benefit of the doubt on this inadmissible evidence and had found, correctly, which is supported in the McCarthy Treatise as well as in the Filipino Yellow Pages case, that a handful of telephone calls is not sufficient enough or a handful of statements of confusion is not enough to meet that factor of actual confusion, which is just one factor, by the way, of the entirety of the eight sleek craft factor test. Yes, it is open one, right? So you're sort of saying it's the only one that matters, but I still don't understand why it's a good idea if we disagree with the generic holding. For us to take the first bite at looking at all of these other factors and weighing them, that seems more appropriate to be done by the district court. I would just add again, Your Honor, I don't believe it's exhausting. And by that, I mean there is no admissible evidence in the record that would change any of the factors. The case law makes clear, as the Court correctly found down below, this is de minimis evidence that is insufficient to change any calculation with respect to the sleek craft factors. And I would add secondarily, just more fundamentally, sleek craft requires a comparison of the products that are at issue, the infringing products on the one hand and the defendant's supposed product offerings on the other hand. The only evidence in the record establishes that there is clear luxury boutique items being offered by Sugarfina in the marketplace, very distinctive candies that range anywhere from a four to eight candy box from $50 up to $80. And there is zero evidence in the record as to what product offerings are being offered by the plaintiff. It is their burden under likelihood of confusion to establish that there's some likelihood. And that cannot be done without that comparison of evidence. And they've proffered none of it. All there is is inadmissible evidence about a couple of folks, which by the way, I would add for the record, the declarant in that particular instance, one of the cofounders of the company, could not even remember how many phone calls there were, did not document those calls in any way, couldn't even recall actually what was said with respect to those calls, doesn't even know any of the callers' names, and then at the end of his testimony wasn't even sure exactly when those phone calls took place. So the idea that that is sufficient to meet a burden of proof on likelihood of confusion, I would submit is not supported by any case law, and in this record, therefore, would make a likelihood of confusion analysis by this court very straightforward. But as to generics. Let me ask you another question before we leave this idea about pleading. If we assume the district court erred in concluding that the plaintiffs had not pled that Sugarfina used the mark, can we still affirm? If you agree with the... If we assume the district court erred in concluding that the plaintiffs had not pled that Sugarfina used the mark Candy Graham, can we still affirm? Well, I believe for two reasons, Your Honor. Yes. So as a matter of pleading, if you believe it was sufficient or this court found that the court erred and there was sufficient notice given, there still is a completely undeveloped record factually. There's no expert testimony. There is no fact discovery. Can I do that without sending that back to the district court? It would be their burden in that instance, Your Honor. And yes, you could find that there is an absolute dearth of evidence to establish that this use of this envelope somehow equates to a hyphen and therefore equates to infringement and liability as well. But I would add secondarily, Your Honor, with respect to this issue. If Your Honor were to conclude, Your Honors, were to conclude that Candy-Graham was being used in some manner by the defendants, and by the way, that Twitter post has been excluded, all that's left is this envelope issue that they've created for the first time, first time. But they're saying that they're entitled to make the argument to the jury that Candy Envelope-Graham is equivalent to Candy-Graham. How do you respond to that? Well, number one, that would be completely unfair, as the court, I believe, was correctly alluding to in the context of this case. There was no fact discovery, no expert discovery. There was not even an expert report that we proffered, because our expert report, the only one in the case, was Candy-Graham, all one word, and Candy-Graham, because this envelope argument had never been made before. So it wasn't even a part of that survey evidence. So the idea that they get to have a jury trial on something that is listed within a complaint somewhere and not elucidated in any way, shape, or form anywhere else in that pleading, and in fact, specifically pleading that we use Candy-Graham. Well, how does that change the contours of your litigation strategy or your discovery strategy in any way? If this was sent back, Your Honor, and now we're going to have a case about Candy-Envelope-Graham, I believe we would have to then consider whether or not there had to be reopening of discovery, expert analysis that would be taken, because this argument was not developed in any way, shape, or form. That's what I'm asking. That would... How would it have changed your discovery strategy, your preparation of experts, if you had read this photo of Candy-Envelope-Graham as equivalent to Candy-Graham? How would that have changed? Most fundamentally, I would have tailored an expert survey specific to Candy-Envelope-Graham and determined whether or not there was any single source or any brand recognition associated with it, just like we did with Candy-Graham, all one word, and Candy-Graham, which was a part of the Halporin survey evidence that we provided in this case. We also would have done targeted evidence out in the marketplace itself. Are there newspaper articles? Well, it seems to me that all of this is in the complaint. I mean, I'm looking, for example, at paragraph 30, you know, where it says Candy-Envelope-Graham, after it says it's infringing on the trademark by using this very thing. So I really don't have... I really don't even understand your we are surprised argument. There's picture after picture and all these other allegations of infringement. Well, number one, Your Honor, this envelope argument wasn't even raised on summary judgment. It is appearing for the first time here on appeal. So the idea that there was notice and it was plainly in the complaint and the plaintiff was planning on having this jury trial focused on the envelope is belied by this... The complaint, whether it was developed is a different question, but it's in the complaint visually in living color. And then the argument is, Your Honor, that we used Candy-Graham, not that we used Candy-Graham or Candy-Envelope-Graham or Candy-Graham, all one word. Well, some of the other paragraphs say they infringed it in the following way. Here's a picture. I mean, worth a thousand words, they say, but anyway, I'm obviously only speaking for myself. I don't see this surprise argument as having merit. Understood, Your Honor, and respectfully, I would just again argue there was no development of this argument in discovery. I think that speaks a thousand words and is telling that this was just a representative picture in the complaint. This was not the thrust of the action because what they pled was that we infringed and used Candy-Graham, all one word. But we would win otherwise, I would submit, Your Honor, to get back to the question, Your Honor, that you were asking. I'm glad we got back, but that's okay. I want to hear what your answer is. Yes, because in this case, the only evidence that Candy-Graham is generic, the only evidence that there's no confusion about Candy-Graham is proffered by the defendants, but we don't even have the burden on likelihood of confusion, yet we are the only ones with a survey that establishes that Candy-Graham, if that is, as they've argued, is the functional equivalent of Candy-Graham, is in fact not confused in any way, shape, or form in the community and by not a single respondent in that 600 respondent survey is not associated, excuse me, in any way, shape, or form, any way, shape, or form with the plaintiff global apogee in this case. So I believe the evidence would demonstrate we would win otherwise, but I would also contend that while that's true with respect to likelihood of confusion, it is equally true with genericness. If somehow the burden was shifted because that meant that we used Candy-Graham, all one word, so the burden is on us for genericness. Same again. The only evidence that's been proffered in this case about Candy-Graham having identification in the community with the plaintiff, which is that it has none, is from the defense, and there's no evidence proffered from the plaintiff as to how Candy-Graham, in any way, shape, or form, is not generic. So even if we had the burden, even if that burden was ours, there's no evidence otherwise to contravene the seven articles submitted within the 50 exhibits we've submitted about its common usage out in the industry, and again, a survey which even though the thrust of the action was only Candy-Graham, and I'm going to take credit for it, that I asked for our expert to also do Candy-Graham just in case, and I'm glad I have that while I'm standing here today. The overwhelming evidence was, again, as I noted before, it has no reference whatsoever in association with the plaintiff in this particular action. I would submit, Your Honors, that for those two reasons, genericness and likelihood of confusion, we should prevail on summary judgment. I would further submit that the court was correct on damages as the court had found, that there was no evidence proffered timely with respect to experts, and that that was promised as a part of their damages theory in this case. In addition to that, that there was no connection between the alleged infringing sales at issue in this action, and how that number would represent an appropriate discouragement theory with any reasonable certainty whatsoever. So the damages theory should be affirmed as well. With respect to our cross-appeal, just briefly. Let me over time so we can wrap up. I apologize. Just briefly. With respect to the cross-appeal, I'll submit on the disqualification issue, but I would further argue, though, under Octane Fitness, that here we have a case where there is no evidence whatsoever, even if we accepted, Your Honor, the pleading argument that they're advancing now with respect to this envelope issue, that they utterly failed to proffer any evidence with respect to genericness, any evidence with respect to likelihood of confusion, and in this particular action, failed to properly and timely produce an expert report on damages. But not only that, for all of the reasons identified in the disqualification motion, there were privileged documents that were reviewed, there was a moving target strategy that was utilized, and again, there were blown deadlines with respect to expert issues that on the second prong of Octane Fitness, unreasonable litigation tactics, we believe, would fundamentally warrant an award of attorney's fees in this action, and that it should be remanded to determine what that amount is as listed in our initial moving targets. But an attorney's fees award is, under the standard of review, the attorney's fees award is an abuse of discretion, and it's also may award to the prevailing in cases that are exceptionable in the totality of the circumstances. So I've got a district court who says, using their best discretion, this does not need attorney's fees, and evidently, it isn't exceptional, and therefore, it doesn't award fees. Where have I got the idea that I can undo that? So a couple of things, Your Honor. With respect to abuse of discretion, if the court were to ignore a particular factor and push it aside, then that would be a reason as to why it abused its discretion. Here the court did not take into account a couple of things. Number one, the court didn't take into account the utter dearth of any evidence with respect to likelihood of confusion in analyzing attorney's fees. The second thing the court did was find the disqualification motion is moot and therefore did not go through an analysis of the types of materials that plaintiff's counsel and he's not arguing that his law firm didn't go through them, that plaintiff's counsel's utilized included on its exhibit list and, in fact, included six of those exhibits, plainly privileged documents, in opposition to summary judgment. Those two important factors were not considered by the court. We would argue with all due respect, I understand the deference that should be given in instances like this, but this is an unusual and exceptional case because of those kinds of circumstances and that's why you move for attorney's fees. There was just simply zero evidence in unreasonable tactics in this case, Your Honor. All right. Thank you, counsel. Thank you, Your Honors. Thank you for the two minutes. What do I think should be done here? I think that we should have an analysis of the sleek craft factors on the evidence in the record. By us? No, no, no. By the district court. I'm sorry. By remand, but by the district court. I believe this should be remanded down to the district court and I think this issue of surprise and unawareness that the candy envelope hyphen gram was . . . it's been in the case from inception, so it's disingenuous to say this wasn't something we provided notice of and that we . . . It's going to be interesting for me. I've been a district judge. I've had my rulings set above and the case gets up there and they do all this argument and then after they get through, they come back on a case that I did not even understand. And my worry is that this envelope stuff has not been very well explained to the district court any place, that the summary judgment motions, nothing really got to that. Now I know how to look at pleading and I know what a rule eight standard is and I know when I can throw them out and when I can't and that envelope stuff is there and there's no way to get around it, but if you're never going to argue it, the district court's going to say, what did Graber, Smith and Winn do with this case? This is a different case than we ever saw. Is that what they're going to say? Because you didn't put it to them the way you're putting it to us? I mean, that's the worry that I have. Just to be very fair with you and having sat below and had the court give me the business about something I never got argued about. We have another unusual fact in this case. Our district judge that was with the case from inception passed away unexpectedly. Judge Gutierrez inherited the case and I think had the case for only a few weeks before granting the summary judgment. So in fairness to Judge Gutierrez and his staff, this was something that they inherited with very little time and it may have been that there was plenty of evidence on the motions to dismiss in front of our original district judge. We did have a changing of judges and I don't think- I'm not sure what that has to do with anything because you were in front of a good district judge, very experienced and I'm sure he thoroughly worked up the summary judgment motion. Excellent judge. No criticism of Judge Gutierrez. My only point was in response to Judge Smith's comment that Judge Gutierrez had the case and did the best he could under the circumstances. No criticism at all, but we did have a change where we had years of litigation and then a changing of the judges. It's only to say that we believe that this was in the record and it was litigated and we should have the opportunity to have that factual issue determined under Sleecraft by the district court. All right. Thank you very much to both sides for your helpful argument today. The matter is submitted. Thank you. The last case, Yichao v. Zhang and California Investment Migration Fund has already been submitted on the briefs and the records. That concludes our argument calendar for this morning. We'll be in recess until tomorrow morning. All rise. The court for this session stands adjourned.
judges: GRABER, SMITH, NGUYEN